UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DIRECTORY ASSISTANTS, INC., | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | No.: |
| | : | |
| vs. | : | |
| | : | |
| ANTHONY L. ALBANO d/b/a  YELLOW | : | |
| PAGE ADVISORS, | : | |
| | : | |
| Defendant. | : | DECEMBER 6, 2007 |

## VERIFIED COMPLAINT

NOW COMES Directory Assistants, Inc. ("DAI") that submits the following Complaint

for Permanent Injunction and Other Relief.  In support thereof, the Plaintiff states as follows:

### Jurisdiction and Venue

1.      Plaintiff, DAI, is a corporation organized and existing under the laws of the state

of Connecticut with its principal place of business in Glastonbury, CT.  DAI provides consulting

services to assist commercial businesses in reducing their yellow page advertising costs.

2.      Defendant, Anthony L. Albano d/b/a Yellow Page Advisors ("Albano"), is a

citizen of the State of Massachusetts.

3.      The amount in controversy exceeds $75,000.00, exclusive of interest and costs.

HART1-1420140-4

4.      The Court has subject matter jurisdiction by reason of diversity of citizenship, 28
U.S.C. § 1332.

5.      Venue is proper in this district because a substantial part of the events giving rise
to the claims against Defendant occurred in this district and because the Defendant is subject to
personal jurisdiction in this district.  28 U.S.C. § 1391.

6.      Personal jurisdiction exists over Defendant because the claims alleged arise out of
tortious acts committed in Connecticut, and arise out of contracts made or to be performed in
Connecticut.

7.      Albano was employed by DAI as a sales consultant from about May 2001 to
approximately December 6, 2005.

8.      In consideration of his employment with DAI, Albano entered into a
Confidentiality and Non-Compete Agreement, dated May 8, 2001 and made a part of this
Complaint. Exhibit 1 is hereinafter referred to as the "May 2001 Non-Compete."

9.      The non-compete between DAI and Albano provided in part:

> 4. Non-Competition. During my employment with the Company
> and for a period to two (2) years following the expiration or
> termination of such employment, I will not directly or indirectly
> provide directory advertising consulting services for any person,
> firm, or entity with respect to directory advertising in any of the
> following states: Connecticut, New York, New Jersey,
> Massachusetts, Rhode Island, New Hampshire, Vermont,
> Pennsylvania and Maine. I hereby acknowledge that this non-

competition obligation is fair and reasonable in time and scope. I
further acknowledge that, following the termination or expiration
of my employment with the Company, I will be able to earn a
livelihood without violating the provisions of this paragraph.

10.     During the course of his employment with DAI, Albano was given extensive

access to DAI's confidential sales and other information.  Examples of such confidential

information include, but are not limited to, customer lists and databases, contact names for

various customers, and marketing concepts and strategies and policies and procedures.

11.     On or about December 6, 2005, Albano's employment was terminated by DAI.

12.     Upon information and belief, Albano copied DAI's contracts, forms and

procedures, and misappropriated DAI's confidential information in establishing his new

competing business known as Yellow Page Advisors ("YPA").

13.     Upon information and belief, Albano entered into yellow page advertising

consulting agreements under the name YPA and received revenue from M&T Bank ("M&T")

which advertises in Connecticut, New York, Pennsylvania.

14.     Albano also entered into an advertising agreement with Baltimore Washington

Medical Center ("Medical Center") which was a prospective client of DAI and Albano knew of

DAI's intentions to enter into a business relationship with that company prior to his termination.

15.     During his exit interview with DAI, Albano stated in writing that he clearly understood the terms and conditions of the Non-Compete Agreement and that he agreed to abide by its terms following the termination of his employment.

16.     Defendant Albano breached the May 2001 Non-Compete between him and DAI in one or more of the following ways:

    (a)    By refusing to return DAI's confidential information;

    (b)    By using DAI's confidential information following the termination of his contract with DAI;

    (c)    By competing against DAI in territories covered by the Non-Compete Agreement; and

    (d)    By falsely representing to third-parties that a certain Stuart Blackburn had obtained permission from DAI to allow him to compete against DAI despite the May 2001 Non-Compete.

17.     As a result of Albano's foregoing actions, DAI has suffered and will continue to suffer substantial harm due to the loss of business, loss of present and future customers, loss of standing in the industry, loss of goodwill, and past, present and future economic loss.

18.     Albano's conduct as aforesaid was willful and malicious and undertaken to defraud DAI of its benefits under the contract.

19.    As a result of Albano's violation of the post-termination covenant not to compete,

DAI has suffered irreparable harm for which it lacks an adequate remedy at law.

**WHEREFORE**, the Plaintiff seeks:

1.    A permanent injunction enjoining Albano, Yellow Page Advisors, and all those acting in active concert with them from using, selling, distributing, dispensing, or otherwise making use of the Plaintiff's confidential information;

2.    A permanent injunction enjoining Albano, Yellow Page Advisors, and all those acting in active concert with them from violating the post-termination covenant in the May 2001 Non-Compete between Albano and DAI;

3.    A permanent injunction enjoining Albano, Yellow Page Advisors, and all those acting in active concert with them to return to the Plaintiff any and all customer information, business information, products, equipment, personnel records, other nonpublic information, inventory, confidential and proprietary information;

4.    An accounting of all moneys received by Albano, Yellow Page Advisors, and/or those acting in active concert with them arising from Albano's wrongful competition while under contract with Defendant or since the termination of his employment;

5.    Interest and costs as provide per the Non-Compete Agreement;

6.    All costs of collection including reasonable attorney's fees;

7.    Such other and further relief as in law or equity may be appropriate; and

8.    A Jury Trial.

PLAINTIFF,
DIRECTORY ASSISTANTS, INC.

By _____

Jude Francois (ct 25620)
Robinson & Cole, LLP
280 Trumbull Street
Hartford, CT 06103
(860) 275-8200
jfrancois@rc.com

6

## VERIFICATION

I, Michael Cody, the Director of Directory Assistants, Inc, being duly sworn do hereby

depose and say that I have read that allegations of the foregoing complaint and that the same are

true and accurate to the best of my knowledge, information and belief.

_____
Michael Cody

Sworn to and Subscribed   DECEMBER
Before me this 4 <sup>th</sup> day of November, 2007

_____
Notary Public/Commissioner of the Superior Court
My Commission Expires:

LINDA S. LUKACHEK
NOTARY PUBLIC
MY COMMISSION EXPIRES MAR. 31, 2012

# Exhibit
# 1

## CONFIDENTIALITY AND NON-COMPETE
## CONTRACT

This is a Confidentiality and Non-Compete Contract between DIRECTORY ASSISTANTS, INC. and

_Anthony ALBANO_

EMPLOYEE NAME

_22 Lyman RD, WEST HARTFORD, CN_

EMPLOYEE ADDRESS

In this Contract, the above named employee is referred to using the words "I", "me", "my", and "mine", and Directory Assistants, Inc. is referred to as the "Company."

The Company provides consulting services in connection with directory advertising (yellow and white page) advertising. Such services are referred to in this Contract as "directory advertising consulting services," which include, without limitation, (a) disclosing information, cost saving suggestions, theories, options and advice clients may use to reduce its directory advertising expense, (b) disclosing advice to clients on directories, sizes, strategies, copy, concepts, colors, market plans, discounts, rates, removal of placements, etc., (c) advising clients on ways to achieve their directory advertising objectives, (d) applying the policies and procedures developed by the company to complete a cost effective directory advertising education and analysis and (e) implementing and reviewing directory advertising programs on behalf of clients.

I recognize that, during my employment, I will have access to certain confidential and proprietary information, including policies and procedures belonging to the Company. I will also have opportunities to develop and maintain personal relationships with clients and potential clients due to the resources and efforts of the Company. Such information and such relationships are essential to the Company's business. I acknowledge that the Company's willingness to employ me depends upon my continuing commitment to hold the Company's confidential and proprietary information in confidence, to refrain from using such information to compete with the Company, and to comply with all of the provisions of this Contract.

In consideration of my employment by the Company and other good and valuable consideration, I hereby agree as follows:

1. <u>Employment Full Time</u>. During my employment with the Company, I will devote my full time and efforts to the business and interests of the Company and to the performance of such duties as may be assigned to me by the Company. I acknowledge that notwithstanding any prior or continuing relationship between me and any of the company's clients, every person, firm, or entity for whom I contact in an attempt to perform directory advertising consulting services, or do in fact perform directory advertising consulting services during my employment with the Company is a client of the Company.

2. <u>Non-interference with Employees</u>. During my employment with the Company and for a period of two (2) years following the expiration or termination of such employment, I will not directly or indirectly attempt to influence any other employee of the company to terminate his or her employment with the Company.

1

3. <u>Non-interference with Clients</u>. During my employment with the Company and for a period of two (2) years following the expiration or termination of such employment, I will not directly or indirectly (i) make any statement or perform any act that impairs the relationship between the Company and any of the Company's clients, or (ii) solicit any of the Company's clients, for myself or for anyone other than the Company, with respect to the providing of directory advertising consulting services. For purposes of this paragraph, a person or entity shall be deemed a client of the Company if the Company or any of its employees or agents has provided or attempted to provide directory advertising consulting services for such person or entity during the two (2) year period immediately preceding the time in question.

4. <u>Non-Competition</u>. During my employment with the Company and for a period to two (2) years following the expiration or termination of such employment, I will not directly or indirectly provide directory advertising consulting services for any person, firm, or entity with respect to directory advertising in any of the following states: Connecticut, New York, New Jersey, Massachusetts, Rhode Island, New Hampshire, Vermont, Pennsylvania and Maine. I hereby acknowledge that this non-competition obligation is fair and reasonable in time and scope. I further acknowledge that, following the termination or expiration of my employment with the Company, I will be able to earn a livelihood without violating the provisions of this paragraph.

5. <u>Confidential Information</u>. I recognize that the Company's confidential and proprietary information is very valuable to the Company, having required substantial investments of time and resources. For purposes of this Contract, the term "confidential and proprietary information" includes (i) the names and addresses of clients of the Company and all persons or entities that have ever been clients, (ii) procedures, systems, methods, and forms used by the Company, (iii) financial data, (iv) information regarding projects, programs, marketing, and pricing, and (v) all other information relating to the Company, its business, its services, or directory advertising consulting services in general that is not generally known to the public. At all times during my employment with the Company and thereafter, I will hold the Company's proprietary and confidential information in strict confidence and will not use or disclose any such information, except as may be required by my duties as an employee of the Company. Nothing in this paragraph shall be construed to prevent disclosure or use of information that was in my possession prior to receiving it from the Company, becomes a part of the public knowledge other than by a breach of this Contract, is rightfully received by me from a third part not obligated to hold such information confidential, or is required by law to be disclosed (but only to the extent that such disclosure is legally required).

6. <u>Return of Materials</u>. Upon the Company's request and, in any event, promptly upon termination or expiration of my employment with the Company, I will return and deliver to the Company all materials in my possession or control that contain confidential and proprietary information, including without limitation, memoranda, computer programs, documents, notes, and all other media, and I shall not retain (for my own use or the use of any third party) any such materials or any copies thereof.

7. <u>Remedies</u>. I recognize that the Company would suffer irreparable harm if I were to violate any of the terms of this Contract. Accordingly, in addition to any other remedies the Company may have, I agree that the Company will be entitled to an injunction restraining any violation of this Contract or, if applicable, specific performance. I hereby waive, with respect to any future dispute related to this Contract, any defense based on the argument that the company will not be irreparably harmed by a breach or that the Company has available to it an adequate remedy at law.

2

8. <u>Cost of Collection</u>.  I agree that in the event Directory Assistants, Inc. is required to enforce this Confidentiality and Non-Compete Contract, Directory Assistants, Inc. will incur substantial costs of collection including, but not limited to, attorney fees.  I fully realize that these costs could exceed $20,000.00 and agree to be liable for any and all reasonable costs of collection, including legal fees.

9. <u>Binding Effect</u>.    This Contract shall be binding upon my heirs and personal representatives and shall inure to the benefit of the company and its successors and assigns.

10. <u>Severability</u>.  In the event that any part of this Contract is held to be illegal or unenforceable in any jurisdiction, it is the intent of the parties that the affected provisions be enforced to the maximum permissible extent and that all other provisions of this Contract shall remain in effect.

11. <u>Choice of Law; Forum</u>.  This Contract shall be governed by the laws of the State of Connecticut, without regard to its conflicts of law rules, and all actions arising under or related to this Contract may be heard by the state or federal courts located in the State of Connecticut.

Date: 5/8/01

_____
Employee Signature

ANTHONY L. ALBANO
Printed Name of Employee

Accepted:

DIRECTORY ASSISTANTS, INC.

By:_____

Date:_____

3