UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

DIRECTORY ASSISTANTS, INC.    :
                              :
v.                            :  CIV. NO. 03:07CV1801 (WWE)
                              :
ANTHONY L. ALBANO d/b/a       :
YELLOW PAGE ADVISORS          :

RECOMMENDED RULING: PLAINTIFF'S MOTION FOR JUDGMENT AND TO
ENFORCE SETTLEMENT AGREEMENT [DOC. #46]

Pending is a Motion for Judgment and to Enforce Settlement Agreement filed by plaintiff Directory Assistants Incorporated. [Doc. # 46]. The Court heard argument on December 10, 2010, and after careful consideration, the Motion for Judgment and to Enforce Settlement Agreement is **GRANTED**.

I. Background

This action arises out of plaintiff's allegations that defendant Anthony Albano d/b/a Yellow Page Advisors violated a confidentiality and non-compete agreement dated May 8, 2001, in which the defendant agreed that for a period of two years following his employment with Directory Assistants Incorporated, he would not provide competing services in a number of enumerated states.[1] The two year period expired on December 6, 2007.

---

[1] The states include: Connecticut, New York, New Jersey, Massachusetts, Rhode Island, New Hampshire, Vermont, Pennsylvania and Maine.

1

## II. Settlement Negotiations

On December 7, 2009, a settlement conference was held before the undersigned. [Doc. # 41]. At the settlement conference, the parties reached an agreement on the essential terms of a settlement of this action. The essential terms included, first, that Mr. Albano would stipulate to a judgment in favor of the plaintiff in the amount of $66,000; and, second, that plaintiff would stay execution of the judgment for a period of time to allow Mr. Albano to file for bankruptcy. Further, the parties agreed that plaintiff would not object to a discharge of the debt in a future bankruptcy proceeding. The Court would retain jurisdiction to convert the agreement into a judgment. On December 8, 2009, the day after the settlement conference, the Court entered an Order administratively closing the case, stating that the "parties have reported that this action has been settled in full." [Doc. # 40].

The parties memorialized their agreement in a draft settlement agreement. [Doc. # 47-1]. The terms, set forth in this draft and to which defendant never objected, are consistent with the terms agreed upon at the December 7, 2009 settlement conference. The draft agreement provides, in pertinent part, that,

> 1. Albano shall pay the sum of $66,000.00 (the Settlement Amount") to DAI in full and final settlement of the Action, and shall report to the Clerk of the Court in the Action that the case is "settled" subject to Action being reopened in the event that Albano does not file a bankruptcy petition under 11 U.S.C. § 701. et seq. on or before January 31, 2010.
>
> 2. Albano agrees that if [sic] fails to file a bankruptcy petition under 11 U.S.C. 701, et seq. on or before January 31, 2010, <u>that he will not object to the reopening of the Action; that he waives any and all defenses to the Action, and that, upon reopening of the Action, Judgment by Stipulation shall enter against him in the amount of $66,000.00.</u>

[Doc. # 47-1 (emphasis added)].

From January through March 2010, defendant made requests to plaintiff to extend the date by which to file bankruptcy. Plaintiff granted the requests. On March 1, 2010, plaintiff and defendant's counsel circulated via e-mail a draft of the Judgment. The draft Judgment, first proposed by plaintiff's counsel and revised by defendant's counsel, provides, in pertinent part, that,

> JUDGMENT in this matter shall enter in favor of the plaintiff, Directory Assistants, Inc., and against defendant, Anthony Albano, in the amount of SIXTY SIX THOUSAND AND XX/100 ($66,000.00) DOLLARS. Execution on said Judgment shall be stayed until 5:00 p.m. on March 3, 2010.
>
> [. . .]
>
> The Plaintiff also stipulates that it will not contest the dischargeability of the judgment in bankruptcy, <u>provided that Defendant</u> files a bankruptcy petition under 11 U.S.C. §701, et seq. on or before March 15, 2010.

3

[Doc. # 47-2 (emphasis added)].

The second revised draft of the Judgment proposed by defendant's counsel, is identical to the first draft, except that the execution of the Judgment was to be stayed until March 15, 2010. [See Doc. # 49-1, p. 30-31 and compare with Doc. #47-2].

Neither the draft settlement agreement nor the judgment was signed by the parties.

To date, defendant has not filed for bankruptcy. Opposing the motion to enforce the settlement agreement, defendant argues that implicit in the settlement agreement was his ability to file for bankruptcy. Thus, he argues, his inability to file for bankruptcy renders the agreement unenforceable. Plaintiff counters that settlement was never conditioned on the defendant's eligibility for bankruptcy, which fact is supported by the draft settlement agreement and judgment agreed to by defendant.

III. Legal Standard

"Under Connecticut law, the enforceability of a settlement agreement is determined using general principles of contract law." Brandt v. MIT Development Corp., 552 F. Supp. 2d 304, 319 (D. Conn. 2008) (citing Omega Engineering, Inc. v. Omega, S.A., 432 F.3d 437, 443 (2d Cir. 2005)). "A contract is binding if the parties have mutually assented to the terms, and where the terms of the agreement are 'clear and unambiguous'." Id. (citing

4

Audubon Parking Assocs. Ltd. P'ship v. Barclay & Stubbs, Inc., 225 Conn. 804, 811 (1993)) (internal citations omitted). "Generally, a trial court has the inherent power to enforce summarily a settlement agreement as a matter of law only when the terms of the agreement are clear and unambiguous . . . and when the parties do not dispute the terms of the agreement. As a result, the court's authority in such a circumstance is limited to enforcing the undisputed terms of the settlement agreement that are clearly and unambiguously before it, and the court has no discretion to impose terms that conflict with the agreement." Nanni v. Dino Corp., No. 29340, 2009 WL 2871363, at *2 (Conn. App. Sept. 15, 2009) (internal quotation marks and citations omitted).

Where a settlement agreement has not been signed, Connecticut courts determine whether there has been mutual assent using a three-part test. Omega, 432 F.3d at 443. "The parties' intent is determined from the (1) language used, (2) circumstances surrounding the transaction, including the motives of the parties, and (3) purposes which they sought to accomplish." Id. (citing Klein v. Chatfield, 166 Conn. 76, 80 (1974))). "'The intention of the parties manifested by their words and acts is essential to determin[ing]' whether the parties entered into a settlement agreement." Brandt, 552 F. Supp. 2d at 319 (quoting Hess v. Dumouchel Paper Co., 154 Conn. 343, 347

5

(1966)).

IV. Discussion

The facts of this case satisfy all three of the factors for determining whether an enforceable settlements exists. With regard to the first factor, the discussion detailed above concerning the parties' e-mails and drafts, along with this Court's records of the conference confirm that the parties settled the case by agreeing to (1) a judgment in favor of the plaintiff for $66,000, which would be stayed to give defendant time to file for bankruptcy; and (2) plaintiff's agreement not to object to the discharge of the debt if defendant filed for bankruptcy.

Defendant's position -that filing for bankruptcy was a condition to the survival of the agreement- is not supported by this Court's review of the case file or the language used in the draft settlement agreement and judgment, which defendant approved. The language in the settlement agreement and judgment allowed for the possibility that defendant might file for bankruptcy and set forth plaintiff's obligation if defendant filed for bankruptcy. However, plaintiff was concerned that a delay to file for bankruptcy was a ploy by defendant to avoid the imminent trial; defendant's agreement to stipulate to a judgment in favor of plaintiff in the amount of $66,000 with a grace

period to give defendant time to file was specifically agreed upon to address this concern. Paragraph 2 of the draft agreement provided for a contingency in the event defendant did not file for bankruptcy. It states, "judgment shall enter against him [defendant] in the amount of $66,000.00". [Doc. # 47-1]. Similarly, the language of the draft judgment approved by defendant does not condition defendant's agreement to stipulate to the judgment on defendant filing for bankruptcy. It states, "Plaintiff also stipulates that it will not contest the dischargeability of the judgment in bankruptcy, <u>provided that Defendant</u> files a bankruptcy petition under 11 U.S.C. §701, <u>et seq</u>. on or before March 15, 2010." [Doc. # 47-2 (emphasis added)]. This provision describes plaintiff's obligation in the event that defendant filed for bankruptcy by the noted date. The first factor is overwhelmingly satisfied.

With regard to the second factor, the circumstances surrounding the parties' settlement included avoiding a trial, which was scheduled to begin within a week of the settlement conference. [<u>See</u> Doc. # 33, scheduling order, jury selection set for 12/14/2009, jury trial set for 12/15/2009]. Avoiding the uncertainty of trial motivates almost every party that negotiates a settlement. <u>See</u> <u>Brandt v. MIT Development Corp.</u>, 552 F. Supp. 2d 304 (D. Conn. 2008) (citing <u>EEOC v. Beauty Enter. Inc.</u>, 2007 WL 3231692, at *8 (D. Conn. 2007)). The impending trial

7

undeniably motivated plaintiff and defendant to arrive at a settlement in this case. As such, the circumstances surrounding the settlement agreement support the parties' mutual assent.

As for the third factor, the terms agreed upon accomplished the objectives of both plaintiff and defendant. The settlement and judgment would give plaintiff finality and avoid the expense and uncertainty inherent in a jury trial. On the part of defendant, he too would obtain finality and an agreement from plaintiff that it would not object to the discharge of the debt if bankruptcy was pursued. Both sides had good reason to settle this case in light of its long history, defendant's financial situation, and the cost and uncertainty of trial.

V. Mutual Mistake and/or Unilateral Mistake

Defendant argues that the settlement agreement in this case is not enforceable because there was no meeting of the minds as to whether defendant's ability to file for bankruptcy constituted an integral part of the agreement. As stated above, the Court rejects the notion that Mr. Albano's ability to file for bankruptcy constituted a condition of the agreement.

Regardless of this Court's finding, defendant's argument of mutual or, alternatively, unilateral mistake fails as a matter of law. Here, plaintiff was not mistaken; therefore there cannot have been a mutual mistake. As to the claim that the contract is

voidable based on defendant's unilateral mistake, the Restatement provides that,

> Where a mistake of one party at the time a contract was made as to a basic assumption on which he made the contract has a material effect on the agreed exchange of performances that is adverse to him, the contract **is voidable by him if he does not bear the risk of the mistake under the rule stated in § 154**, and
>> (a) the effect of the mistake is such that enforcement of the contract would be unconscionable, or
>> (b) the other party had reason to know of the mistake or his fault caused the mistake.

Rest. (Second) of Contracts § 153 (emphasis added).

In turn, § 154 of the Restatement provides that,

> A party bears the risk of a mistake when
>> (a) the risk is allocated to him by agreement of the parties, or
>> (b) he is aware, at the time the contract is made, that he has only limited knowledge with respect to the facts to which the mistake relates but treats his limited knowledge as sufficient, or
>> © the risk is allocated to him by the court on the ground that it is reasonable in the circumstances to do so.

Id. at § 154

If defendant were mistaken, or even if all parties were mistaken, defendant bore the risk of the mistake under subsection 154(b). The risk of mistake was that Mr. Albano would not be able to file for bankruptcy. At the time of the settlement agreement, both the defendant and his attorney, who is not a bankruptcy lawyer, apparently had limited knowledge concerning Mr. Albano's eligibility to file for bankruptcy. Therefore, any mistake is for

9

him to bear.² See Powell v. Omnicom, 497 F.3d 124, 128 (2d Cir.2007) (citing U.S. v. Bank of N.Y., 14 F.3d 756, 759 (2d Cir.1994)) ("When a party makes a deliberate, strategic choice to settle, a court cannot relieve him of that choice simply because his assessment of the consequences was incorrect.").

VI. Conclusion

This Court finds that plaintiff and defendant entered into an enforceable agreement, that is not voidable by defendant. Therefore, plaintiff's Motion for Judgment and to Enforce Settlement Agreement [Doc. # 46] is **GRANTED** and judgment is entered in favor of the plaintiff in the amount of $66,000.00.

Any objections to this recommended ruling must be filed with the Clerk of the Court within ten (10) days of the receipt of this order. Failure to object within ten (10) days may preclude appellate review. See 28 U.S.C. § 636(b)(1); Rules 72, 6(a) and 6(e) of the Federal Rules of Civil Procedure; Rule 72.2 of the Local Rules for United States Magistrates; Small v. Secretary of H.H.S., 892 F.2d 15 (2d Cir. 1989)(per curiam); F.D.I.C. v. Hillcrest Assoc., 66 F.3d 566, 569 (2d Cir. 1995).

ENTERED at Bridgeport this 8 day of February 2011.

/s/
HOLLY B. FITZSIMMONS
UNITED STATES MAGISTRATE JUDGE

---

² It should be noted that there has been no proffer to the Court as to why Mr. Albano is ineligible for bankruptcy.

10